Next case is In Re Felix Rosado, number 18-3747. Mr. Grote. Good morning. Pleasure to be here. May I have three minutes of rebuttal time, please? Absolutely. I'm counsel for petitioner Felix Rosado. The court has asked us to brief two questions today. One is whether or not his motion for a second successive habeas petition relies on a new rule of constitutional law made retroactive by the United States Supreme Court. The other is whether or not it is appropriate for this court to consider the timeliness of that proposed habeas petition at the 2244 gatekeeping stage. If the court has any preference, I can address one for the other. Timeliness usually makes sense to go first. That's what I was thinking, Your Honor. So we believe that there's a circuit court split as we've briefed in this matter. We think that the 6th, the 9th, and the 10th Circuit have the correct view that timeliness is not a proper consideration under the statutory text, which directs the court to determine whether or not the petition has met the requirements of this subsection. And when it says this subsection, that's in distinction from references to section elsewhere in the statutory code. This subsection does not, in that subsection of 2244B, does not refer to the timeliness or any other aspect. But it does use the word may. May is permissive, not mandatory. It may allow the... Yeah, it may grant leave to file. What is there that fetters this or disallows consideration of timeliness? So I think that it may allow it to proceed. It does not necessarily give the court free reign to consider any conceivable merits, timeliness, or other jurisdictional issues. Let's look at how the Supreme Court has approached this. You know, we've got Granberry, we've got Day v. McDonough, we've got Wood v. Milliard, which you did brief, which say ordinarily, probably a good idea to leave it. But given considerations of exhaustion, given comedy and finality, even if the government hasn't briefed it, courts of appeals have discretion to raise this sui sponte, at least in cases where it's going to be very clear. Now, that's for a first habeas petition. Wouldn't you think the gatekeeping requirement would be higher for a second or successive, which Habeas, which EDPA is more restrictive of? So I don't necessarily think that the scrutiny will be or should be higher at the 2244 stage, because the statutory scheme contemplates that the matter is going to be reviewed under the stringent standards by the district court. I think that the Wood v. Milliard case is an interesting one and one that we briefed. In Wood v. Milliard, the Supreme Court was recognizing that an initial habeas petition can be subject to a sui sponte raising of the exhaustion defense by the court. That is not a petition that is passing through the gatekeeping stage, however. So our position is that it would be more analogous to consider whether or not the 2244 gatekeeping stage is not analogous to an initial habeas petition. Only after we pass through the gate would we be in an analogous petition, where an arguably erroneous decision would be accompanied by appellate rights for a petitioner. It also is a difficult line to administer if timeliness is to be considered in certain situations. I will, of course, grant that there are instances where some cases, it doesn't matter when it is considered, you put one foot through that gate, if it's allowed to go to the district court, it's getting thrown right back out, right? We can all imagine the easy cases. Council on the other side might argue that this is one. We, of course, contest that. But the problem with allowing that in certain cases is it gets hard to administer where the line might be drawn with all the myriad of different issues that could be raised. Okay, we could have a thumb on the scale. If there's any doubt, let it go forward. But then we've got an issue here as to whether is this, you know, based on Miller or is it based on Montgomery? And if we think there's a clear answer there, why shouldn't we just go ahead and apply it rather than making everyone go through all the motions? So we have our argument as to why Montgomery should be the start date, and we also have our alternative argument as to equitable tolling. Right. Okay. Equitable tolling is normally going to be kind of a messy issue. You're normally not going to have much of a record. That's probably, usually that can be left. But let's say, and you should get to your argument on this afterwards, but if we think that they're right, that this is not a Montgomery case, that this is a Miller case, and so it's well past a year, then don't you have to show us some way in which there could be equitable tolling? If there couldn't be equitable tolling in a case without equitable tolling, you're out of time. End of story. Why go through the motions? Correct. We think that the situation with Montgomery doesn't have an exact analog in prior retroactive rules announced by the United States Supreme Court. It throws a wrinkle into the assessment as to whether it would be Miller or Montgomery that's the start date. I recognize that's separate from the equitable tolling argument, but in the event that it's determined to be Miller, that would have put Mr. Rosado, leave him in a position in which he would have, ironically, encountered to the structure of habeas review, had to have filed in federal court prior to his actual legal ability to pursue a retroactive claim in state court. Even though habeas does, it is a correct view that Mr. Rosado had that you have to exhaust in state court before coming to federal court. That's Holland v. Florida and all sorts of- When exhaustion is not possible, when it's legally barred, et cetera, you just have to do all that you can. At that point, your position would be he couldn't have done anything else, therefore- Correct. I'm glad you brought that up because I think our argument's a bit nuanced in this respect. Between Miller and Montgomery, between June 2012, January 2016, it is true that Mr. Rosado or anybody else who was serving a life without parole sentence, wanted to bring a Miller claim in Pennsylvania, they did not have a remedy to exhaust. They could have filed a habeas petition and they could have said there's no available remedy. Montgomery changed the landscape. With the decision in Montgomery, there now is a state remedy to exhaust. The state of state law from the Cunningham decision is then removed. We characterize that as an impediment. We think that is state action. When was the Cunningham impediment removed? When was Cunningham decided? I believe October 2013. The end of October. When did Rosado file here in federal court? Try to- Oh, I believe it was 2018 after he went through his PCRA post Montgomery. But that October 13th is more than a year after Miller. He would have had to file by June 25th. Oh, so Cunningham was 2013. And that held that Miller wasn't retroactive. So that was the state of law in Pennsylvania to 2016. And our argument as to the start date for statute of limitations is Montgomery undid Cunningham because Montgomery held Miller was retroactive, triggering a new start date, 60 days to get in on a post-conviction relief act petition, which Mr. Rosado did do. But that's assuming that the relevant trigger date is the date when it's made retroactive. But Dodd says limitations begins to run on the date when the Supreme Court first recognized the new right. In other words, why shouldn't Mr. Rosado have done what Mr. Montgomery did, right? Miller's decided in June 25th, 2012, right? Correct. And he had a year before Cunningham had not been decided yet. So after Miller's decided, he can go into court just like Mr. Montgomery did and say, this should be retroactive. And he didn't do that, right? So he missed the one year window that he had. And we recognize if Dodd controls and you don't agree with our argument, this is distinguishable because of the retroactivity issue in the state court erroneous determination on that, then Mr. Rosado did not file within a year after Miller. That's where we would come with our equitable tolling argument, which even though it's based procedurally on the record, we think that there's a unique circumstance here insofar as we formulated it as a rule. Mr. Rosado would not have reached the merits on his... What I don't get is equitable tollings like, hey, he was thrown off because there was this inconsistent state guidance. But Judge Hardiman's point is Miller's June 25th, 2012. One year after that's June 25th, 2013. But he couldn't have been misled by Cunningham because Cunningham is not until four months later in October. So equitable tolling, if Cunningham had come down in March or something, maybe he'd have an argument, but he should have filed before there was any precedent in the state court that would have misled him about this retroactivity. I believe that would go to the due diligence aspect as to whether or not Mr. Rosado was exercising due diligence. At that time, his first federal habeas petition was still pending in the Eastern District Court. He was challenging his conviction, his sentence. He didn't raise that claim at this time. I don't know if others want to talk about timeless. I do want to leave some time to get to reliance here. And I want to know, I think that the way that the state's argument works is, how can you be relying on a decision that draws an express line that you're on the wrong side of? It says people under 18. Now, I know you say, well, Miller only mentions 18 once, but Miller is the culmination of a line of cases, you know, like Roper, where it's very much about society draws the age of majority at 18. This is not just a throwaway mention of 18 in Miller. It's building on a lot, you know, these cases where the death penalty is taken off the table. You know, all these cases draw this line at 18. So how can it rely on that if he's on the wrong side? This is not like a case of extending Brady exculpatory evidence to some new context like forensics or extending Strickland to some new context where no one has addressed SORNA registration before, but Strickland could plausibly go there. This is going over an express numerical line. Why is it still reliance on something that appears to foreclose the claim? I would argue that the United States Supreme Court's line in that matter represented a holding for application of the procedural component of the substantive rule of Miller. The Supreme Court referred to it as a procedural component when talking about how it prohibited the mandatory imposition of life without parole. Then in Montgomery, they went on to characterize the rule as the substantive rule is one that prevents the sentence of life without parole, mandatory or otherwise, if the defendant's crime reflected transient immaturity. Okay, so you're characterizing that as part of the holding of Montgomery, and I think other people would read Montgomery differently. I'm... The Supreme Court said in Montgomery that the rule of Miller was that a defendant cannot be sentenced to life without parole if their crime reflects transient immaturity. I don't think they described that as the rule. I think they said that explained why the court had come to that rule in Miller, but they didn't say we held in Miller that any crime by transient immaturity, you know, this penalty is barred. It just, this was the thinking behind Miller. Uh, Montgomery will say what it says. I do believe that it says if the defendant makes the showing that their crime reflected transient immaturity, life without parole cannot be imposed, even if there is a non-mandatory sentencing scheme. And it did that because it was going through the Teague analysis as to whether this was a procedural or a substantive rule, and it recognized it had this procedural component of not permitting a mandatory sentence. But I would also direct this court to look at N. Ray Hofner. Two of the cases relied on their deal with Miller v. Alabama claims from other circuits, and they also address, um, they arguably have the same line in one case, or I would argue perhaps a more meaningful line in another. So N. Ray Williams, which was cited as a... Can I ask you a question about Hofner, please? Yes. Here's what I understand. So, uh, the holding in Miller is the holding in Miller. Uh, 18 and under is, I think, Justice Kagan's specific words. So why, when you look at Hofner, why shouldn't we look at the language in Hofner and say that, uh, certainly, this is a quote from Hofner, certainly a movement cannot invoke a new rule by reading it so extensively as to contradict binding precedents. When the language is as unequivocal as it is in Miller, why, why isn't this Miller extension that you're seeking deemed to be so expansive? Because in Hofner, it recognized that a Fifth Circuit case, the Sparks case, in which a petitioner used Graham, which held life without parole unconstitutional for non-homicide offenses, could get through the 2244 gatekeeping phase, despite having a homicide offense, that that was permissible. Wait a second. Sparks was a case about whether, in fact, he had committed a homicide offense. So it's about a factual predicate the distributor had defined. It wasn't about the legal scope of the rule. So Sparks, it was my understanding. Aiding and abetting a carjacking resulting in death. And so does that, does aiding and abetting a carjacking and the carjacking results in death, does that fit within a homicide rule or not? I know that counsel on the other side of the V in many cases is referred to our felony murder clients as having participated in a homicide offense. So it is characterized that way. I also know in other situations in which we're representing those individuals, we emphasize that there is no intent to kill. But that is an offense that resulted in a death. And it is arguably a very sharp distinction between Graham v. Florida, which also had a line in the facts of that case. Similarly, in Ray Williams, which was also discussed in Ray Hoffner, that involved conduct that spanned somebody's 18th birthday. So our argument is that the application of the substantive rule, not extending the type of circumstances, the science relied on by the court, the attributes of youth, not extending or changing them at all, but an exact application to petitioner who was 5 months and 11 days old or 18, is application of the same rule. And that the line at 18 years of age, whether or not that distinction applied to Mr. Rosado is so substantive as to preclude relief is a merits question that should be allowed. But let me ask you a question. Let's say there's a 42 year old has been living in his mother's basement, like having her do his laundry and make breakfast for him. And he's immature, but he keeps talking about getting his big business plan off the table, it's like 42 years old. And in order to get his big business plan off, he winds up pulling an armed robbery of some bank and shoot somebody. Is there any logical reason why your approach wouldn't allow him to argue transient immaturity and to say like, no, this can't be tossed as a matter of law. He's immature, he's only 42, eventually he's going to get it together. Is there a stopping point to this argument? Yes. And I think the stopping point has to be rooted in what we know about developmental science. 42 year olds are not developing the way that's older adults. So it goes to 25. Isn't there a lot of science to indicate, at least for males, the brain doesn't close until age 25, it doesn't finish developing? So I've seen that age as well. But what I've seen cited more specifically based on the empirical research, say by Dr. Steinberg in cases in Kentucky and Connecticut, was the empirical research now says that up to age 21, those individuals that are 18 to 21 have the same characteristics, especially under situations of stress or peer influence, that those who are younger than 18 have, which is also consistent with a lot of other indicia of immaturity that we know from, say, what insurance companies charge for those who are 18 or 21,  I don't think it is an endless... Those are such generalities though, right? Which is why... You would concede, would you not, that there are 17 year olds who are remarkably more streetwise and remarkably more experienced than some 25 year olds. But streetwise doesn't necessarily mean that they are not also transient and immature in many ways. But if transient immaturity is the gold standard, then what's wrong with Judge Bibas' hypothetical? I mean, if it's all about transient immaturity, and I can't tell you that I could define the boundaries of that. I guess we'd need to bring in a lot of smart doctors to do that in every single case. But the law has a long history, as Judge Bibas said, of picking these ages that in certain cases of outliers will appear quite arbitrary, right? I agree. I think that the right in Miller, however, it is youth-based. So if you're saying he's 35 or 42, and we know he's going to get it together someday, and maybe it won't be until he's 50 or 60, but he should have a shot at parole. I mean, I'm not going to be arguing that case, and I don't think the court will have any difficulty getting rid of a case that's not rooted in an analysis of youth by somebody who is recognized as an adolescent by not just social and developmental and neuroscience, but there are other legal ages of majority for various types. I mean, drinking alcohol is perhaps one of the most common ones. It's 21, but that's what- The age that we use for age of majority, emancipation, military service. Societally, it is perhaps the most common salient age of majority. Not that it couldn't have picked 21, the drinking age or something, but once it picked that line, why should we move the goalposts? Because it's the function of courts to address rules as applied to comparable situations to determine if they should apply in those situations in development of the constitutional common law. This is not a claim that Mr. Rosado has raised again and again and again. Since he's been convicted, this is a claim that has emerged out of a constitutional standard that is itself evolving, as is the science that underlied the Miller petition. We're asking for a review. But it's all about the rule though, right? I mean, this is one of the things that's interesting and I think tricky about cases like this is it says new rule of constitutional law, right? And am I wrong to view rules differently than rationales? To me, the rule, I sort of associate rule with holding, the rule. What's the rule of Miller? To me, the rule of Miller, and correct me if I'm wrong, the rule of Miller is that you can't, states, or presumably the feds, couldn't have a mandatory sentencing regime that puts those under the age of 18 in jail for life without the possibility of parole. In other words, the judge, the sentencing judge, needs to have the opportunity to exercise some discretion to say this youth, this youthful offender, there's something about him or her that compels me, the sentencer, to not lock him up and throw away the key. Is that not the rule of Miller? So, I personally have come to understand rule is more consistent with right and distinct from holding. I think the First Circuit discussed this in the Moore case, but I reckon- I'm sorry, you said more consistent with what? Rule and right interchangeably. Right. So, the new right of constitutional law. Which- What's the right of Miller? I believe you start with Montgomery's characterization of the right of Miller, which is to be- you cannot be subjected to life without- Can we start with just Miller? And then, I understand what you're saying about Montgomery, but- Yes. What's the right that Miller established? How would you define that? That juvenile offenders cannot be subjected to life without parole. Okay. So, the point of that is that if you're not a juvenile, you don't have any opportunity. Now, I guess that takes us to Montgomery. As I understood your argument before, it's nuanced that, well, that may be the rule or the right of Miller, but Montgomery said something different. Montgomery said it's actually more expansive than what Miller seems to suggest when you read Miller. Is that your argument? I don't think that Montgomery necessarily expands Miller. I just think that it's the courts talking about what the right of Miller is in and of itself. I don't think- What does Montgomery define the rule or right of Miller to be? The substantive right is to be free from life without parole if crime reflects transient immaturity. And the court did not have an occasion to really examine the line. Sure, it said it at 18. They were dealing with 14-year-old petitioners. I think the fact that I know in our petition, there's cases in Illinois. There was the case in Connecticut. It was reversed. There's the one from Washington State that we filed a supplemental opinion. And I think this colloquy exchange right here suggests that there's reasonable grounds to it might seem easy to one or the other of us. I think that it is reliant on Miller. Whether or not it would ultimately get relief is something that should be allowed to be sorted out in the district court. So there's the full range of development of the issue and the opportunity for appeals. If there's no further questions. Judge Greenaway, anything further? Good. Thank you so much. All right. Thank you, Mr. Grote. You still have some time for rebuttal. Mr. Kalisic? Did I pronounce that correctly? It's Kalisic, Your Honor. Kalisic. My apologies. Listen, for 40 years, nobody's gotten it right. I don't expect anyone to on the first try. My name is Ken Kalisic. I'm with the Berks County District Attorney's Office on behalf of the Commonwealth of Pennsylvania. We are the respondents in this matter. Much like opposing counsel, I'll begin with the timeliness argument as well. Sometimes the bad part about going second is all of your thunder gets stolen. And some of mine was in this case in regards to the timeliness argument. There's nothing in our federal case law that prohibits courts from exercising their inherent judicial authority as part of gatekeeping function. Let me ask you this question, counsel. When you think of the statute here, B obviously refers to what the Court of Appeals may do. D sets forth what the district court's function is. When you have a mention of timeliness in B, no reference to time in B, how do you interpret that with regard to how we should think about timeliness? Well, I do understand your point that timeliness is specifically mentioned in D, but I think what as a court we have to hearken back to is that may, as you pointed out in B, because if this was a cut and dry, I'm sorry, Your Honor, if you want to chime in. Authorized, correct? I'm sorry, what was that? In B, it's may authorize. Correct, Your Honor. When it says may, though, I agree with the point that was made earlier. May means there must be some other consideration as well. If there wasn't an additional consideration, it would be a shall. You jump through this hoop that you rely on a rule, then you shall be given permission to file a second or subsequent petition. Where it says may, that's opening the door for the additional considerations that the court could make. All right, so that's a textual argument there, but your friend on the other side's point is, you know, 2244 D, you know, the district court are supposed to be considering the timeliness here, but there's nothing that tells the court of appeals to consider the timeliness. Isn't there a negative inference that we should just be leaving this timeliness stuff to the district court? I think that's one way of looking at it, but I also think that if you're looking at generally a gatekeeping function, inherent in the court is their ability to control their own docket. In this situation, this court where you're functioning as a gatekeeper, it's to keep things out. I point to Inree Vassal, which talks about this, which talks about nothing in the statute requires the court to clearly let in time to bar petitions. And I think that rationale is important here, because if you can look at a case on its face without any, you know, real in-depth deep discussion, there's no reason to make the additional work for the district court, for the council, when it can be decided here and now saying that it is untimely. The key words there are on its face, right? You would concede that if there is any uncertainty or an argument to be made, then that would not be the type of case that we should block at the gate. Well, if you look at the, I agree with that, Your Honor, because if you look at the holding in Vassal, that's actually what Vassal talks about. If you can look at something and say, on its face, this is untimely. So why is this case on its face untimely and it's indubitable? There's nothing that Mr. Groh could argue to persuade us otherwise. Well, then I think it's a lot of the dates that we talked about during co-counsel's initial argument. Miller, which should be the starting point for any timeliness here, based upon Dodd, was in 2012. Mr. Rosado's petition wasn't filed until six years after Miller, five years after his time period would have run. Even if you take Montgomery, or ignoring Dodd, you take Montgomery as being the time that would start it, there's no grounds under Montgomery either because he didn't file within a year of Montgomery either. Additionally, in regards to tolling, statutory tolling here doesn't apply on its face because his initial PCRA petition, I shouldn't say initial, his post-Miller, post-Montgomery PCRA petition was found by the court to not be timely filed under a Pennsylvania state rule of law. I think that knocks statutory tolling out of the situation. And once we get back into equitable tolling, I think the point was made during direct. He didn't do everything he could do. There wasn't a major impediment by the state because Cunningham hadn't come along. We have to come up with a rule, not just for this case, but for the future. A bunch of other cases raise this timeliness issues. And the statute, we're supposed to grant or deny these applications within 30 days. We usually don't have the state's whole record. We often don't have a response from the government. So in a typical case, it doesn't seem like we're well-equipped to consider timeliness, right? I mean, doesn't it make sense as a rule, even if you're advocating for an exception here, as the norm or the rule or the general practice or presumption to defer timeliness until we get to the merit stage, not at the gatekeeping stage? Well, if we were going to by simply go by the rule, then we wouldn't even be considering timeliness in the first place because of what the statute says. But due to the fact that the word may is considered in the rule, I think that's what opens the door to these considerations of timeliness and doing that on a case-by-case basis. It's not as if this court looks at it and says, oh, he's claiming Miller. Second or subsequent petition can be filed. I don't understand, counsel, how may, with regard to the Court of Appeals' ability, may authorize addresses the 30-day issue that Judge Bibas is talking about. I mean, what we're talking about is what is the congressional purpose? It's that the full function is a gatekeeping function. Hofner speaks to that, that it's a gatekeeping function. It was one of Judge Bibas's questions to the Supreme Court in Wood when it talked about exceptional cases being sort of an outlier. I mean, here, there's no mention of time and the gatekeeping function is anticipated to be done on a certain date. Certainly, no consideration of timeliness can be done within 30 days. Doesn't that speak to Congress's desire, intent that timeliness not be dealt with at this point in time? I disagree with that point, Your Honor. I think sometimes when you can look simply at the docket and date things are filed on and quickly make a decision that this was not filed in a timely manner, that can be done within 30 days. How would you be able to make a determination about equitable polling when you just look at dates? Well, I should add, it also comes between the addition of dates as well as what the defendant in their initial request for the second or subsequent is arguing. In this situation, it was Cunningham is our impediment to it. Cunningham just looking at the dates was not an impediment to filing as far as an equitable tolling. So I think it can be done looking at dates and what the defendant's initial argument is because it's something they need to raise. Well, let me ask you this question. Your adversary says the start date is Montgomery, right? So you both are interlocked now in a discussion as to when it begins. How does that permit a panel like ours to look at the situation and say, this is clear on its face when we at least have theoretically a choice as to whether we essentially buy into the Montgomery argument or we don't? Well, Your Honor, I believe that's entirely a legal argument. And I think the Supreme Court precedent from Dodd is clear that it's not when the right becomes retroactive, it's when the right is initially recognized by the Supreme Court. And I think based upon what we have here, we have a clear, multiple clear demarcation lines. You know, Miller was decided this date and found to be retroactive much later by Montgomery. It all depends on how Dodd plays into it, right? That was Mr. Grote's point as well, right? I agree with that. Okay. Could I, I don't know if you want to say more on timeliness. You should feel free to finish up. I do hope you get to reliance as well. I was hoping to get there. Unfortunately, I feel like we use a little too much time on this one. But moving on to reliance, what do you define the rule of Miller to be? Well, I define the rule of Miller to be what the holding was at the end of the first paragraph in Justice Kagan's opinion, which that sentence was, we hold that mandatory life without parole sentences for those under the age of 18, at the time of their crime, violates the Eighth Amendment's prohibition on parole and unusual punishment. All right, but what about Mr. Grote's argument that, you know, there's a lot of expansive language in Montgomery that possibly could be read to change the holding that you just read? In order to answer that question, I have to go back a little bit to what Miller talks about. When Miller goes to its initial decision of saying, we're going to set this line at 18 and say that juveniles can't be given mandatory life sentences, they talk about two lines of cases, categorical bans, and then these characteristic-based bans. The categorical bans, of course, not being able to execute those that are mentally handicapped, not being able to execute juveniles under the age of 18. That is a set line that says absolutely not to these things. It then talks about some of the characteristic-based issues. Those characteristic-based issues, which we touched on a little bit in the earlier argument, you know, the development of the brain, being susceptible to peer pressure, you know, not having a strong character that's presupposed. Transient immaturity. Transient immaturity. One of the buzzwords that's used through a lot of these. When we get to Montgomery versus Louisiana, though, in its discussion of what Miller is, Montgomery refers to the Miller decision as a categorical ban. That's how they get to the idea that this is a substantive rule. Well, maybe it's a categorical ban on LWOP for those with transient immaturity, including Judge Bevis's 42-year-old. But I think it's looking at Montgomery, I think it does draw the line at 18 because it's hearkening back to Miller's ruling of 18. If anything, Montgomery would have been an opportunity for the Supreme Court to say, we don't just mean 18. We mean everyone who has this transient youth or transient immaturity situation. Can I ask you about the relationship between, about how Hofner plays in? There's some language in Hofner that's pretty expansive and says the applicant relies on a rule even if he requires a non-frivolous extension. Rosato's claim here is grounded in Miller's brain science. Is it fair to call Rosato's argument a frivolous extension? I think at this point it is. I think you can call it frivolous because as the Supreme Court has shown throughout the years, we don't always love drawing categorical lines, but in some places for the effect of administration of justice, that has to happen. Throughout society, we draw plenty of lines at 18. You can't vote. You can't serve in the military prior to 18. Some places you can't drive a car without a licensed adult in the car. 18 is a line that society and the legislatures have drawn in tons of places, and it's acceptable for the court to have drawn that line right there as well. But arguing for an extension would not be frivolous, right? I mean, the Supreme Court might decide in a future case that no, the more we think about it, 18 isn't the right number because the male brain keeps developing until 25. So they change it to 25. I mean, is that your argument? Or is your argument that seeking an extension of Miller would be frivolous? Or is it that seeking an extension of Miller does not argue the new rule of law in Miller? It's more the second, Your Honor. And additionally, a petition for a second or subsequent habeas corpus petition isn't the place to be arguing for new law, which that extension would be new law. It's the heartland of that principle is to get the benefit of a rule that has been established, not asking for some new rule. That's for some future case. Correct, Your Honor. Okay, so if the rule of law that Montgomery made retroactive was that those with transient immaturity can't be sentenced to mandatory LWOP, you would concede, I take it, that we should grant the petition and there would have to be a review here as to whether Mr. Rosado could qualify as having transient immaturity. I think if that's the way this court chose to expand the law, then I think that's the result that has to occur. But I think that that expansion of the law is inappropriate at this juncture. I'm out of time. Judge Greenaway, any other questions for Mr. Kalisic? No, sir. Thank you. All right, thank you, Mr. Kalisic. And it's been my honor to argue before you. Thank you. It's nice to see you in, Mr. Grote. Mr. Grote, I don't remember how much time you, three minutes for rebuttal. Three minutes, Your Honor. And it's Mr. Grote, I apologize for not stating that. Please, oh my gosh, thank you. I should not have assumed that I pronounced that correctly, Grote. It's a common and understandable phonetic reading. Yes, Grote, though. I think I was thinking of a baseball player, I think. Wasn't there a famous MLB player named Grote? Yeah, what team was he on, though? Because I want to see if you have the same knowledge that other judges on this court and other courts always bring this man up when I'm in front of them. As a formerly long-suffering Red Sox fan, I can't tell you because I know he wasn't on the Red Sox. If I had to guess, I might guess the Pirates. I don't know. I think Dick Grote was on the Mets. He's from Pittsburgh. That's what it was. Is he? I'm not, I have no relation to him. I think Judge Smith has brought it up before. I know some in the Court of Common Pleas. He was on the Mets. It's a thing with the bench and my name and baseball. All right, well, my apologies. And now that we've had this colloquy, I think in future cases, I'll remember how to pronounce it correctly. Excellent. And in the rebuttal, so a couple points. When he says that the court should assess whether or not Mr. Rosado is seeking the same rule or a new rule, this is what the government was seeking in Ray Hoffner, essentially a Teague analysis to see if a second rule applies. That approach was rejected in Hoffner. He says that the line might be necessary for the effective administration of justice. I would counter that individualized sentencing is perfectly consistent with effective administration of justice and so has the application of the Miller rule to more than 500 cases in Pennsylvania. So I don't think that that rule is necessary to uphold effective administration of justice. There's different ways to administer justice. The constitutional question has to control. The Washington State Supreme Court, they said that they were applying the rule of Miller to a 19 and 21 year old and only expanding the class of defendants. I just cite that as what we would consider reasonable jurists that were coming out on the other side of that question and articulating it consistent with the position that we're advancing in this court, that it's the same rule, applying it to somebody who was over this line of 18. However, statutory tolling, I did wanna talk about, we touch on this in the brief, but if Montgomery is the start date, then there will also have to be an assessment as to whether or not the statute of limitation was told while Mr. Rosado attempted to bring his claim in the Pennsylvania courts in his PCRA petition. It was formally rejected on timeliness grounds. A similar case, raising the exact same issue, I know it very well because I was counsel in this, the Avis Lee case. When the Superior Court decided that sitting en banc, they themselves said, our ruling that Ms. Lee's petition is not timely is better characterized as a merits ruling. I'm paraphrasing. But it was identical, the timeliness decision with determining the scope of the rights. And it was the U.S. Supreme Court in Artoos versus Bennett, which said, quote, in common usage, the question of whether an application has been properly filed is quite separate from the question of whether the claims contained in the application are meritorious and free of procedural bar. So I just state that to rehearse that the statutory tolling question, we also do not believe is cut and dried. And there's no case directly on point in the Third Circuit determining that. All the more reason that it should be sorted out in the district court so that if either side objects to what happens with a rigorous review there, it can go through the normal appellate process. Any further questions? I'm hearing none. Thank you very much, Mr. Grody. Thank you, Mr. Kulisic, for the excellent, very helpful arguments. We'll take the matter under advisement.